**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HEALTH CAROUSEL TRAVEL NETWORK, LLC<br><br>Plaintiff<br><br>v.<br><br>DAVIN HEALTHCARE WORKFORCE SOLUTIONS, INC. f/k/a STAT STAFF PROFESSIONALS, INC., ROME MEMORIAL HOSPITAL, INC., and CHRISTINE TUCKER<br><br>Defendants | Case No. 1:26-cv-428 (MAD/DJS)<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff Health Carousel Travel Network, LLC ("Health Carousel" or "Plaintiff"), by and through its undersigned attorneys, brings this First Amended Complaint against Defendants Davin Healthcare Workforce Solutions, Inc. f/k/a Stat Staff Professionals, Inc. ("Davin"), Rome Memorial Hospital, Inc. ("Rome"), and Christine Tucker ("Ms. Tucker") (Davin, Rome, and Ms. Tucker are collectively referred to as "Defendants"), and alleges as follows:

**NATURE OF THE ACTION**

**1.** Health Carousel is a healthcare staffing company seeking payment for healthcare staffing services and healthcare professionals it provided, including to Rome hospitals through contracts it entered into with Davin. Health Carousel is owed a principal sum of $339,291.24 plus interest by Davin. This amount is inclusive of sums to which Rome is jointly liable with Davin in the principal amount of $139,484.05. In March of 2025, Health Carousel determined it would no longer provide staffing services because Davin had failed to timely pay under the contracts and was in breach thereof. Davin and its Chief Financial Officer Christine Tucker actively defrauded Health Carousel by providing it payment information that was false to induce Health Carousel to

continue performing. In actuality, Davin, upon information and belief, had pledged the moneys it was supposedly paying to Health Carousel to a secured lender and was in default on its loan. Health Carousel's continued performance caused Health Carousel to incur additional damages, while Davin was able to fraudulent reduce its indebtedness.

## PARTIES AND JURISDICTION

2. Plaintiff Health Carousel is a limited liability company organized and existing under the laws of Ohio, where its principal place of business is located. It provides healthcare staffing services and healthcare providers for medical staffing. Health Carousel is wholly owned by Health Carousel, LLC, whose members are individuals or trusts that are citizens of Ohio, Florida, Delaware and Wisconsin, and no other states.

3. Defendant Davin is a New York corporation with a principal place of business located in Saratoga County at 18 Division Street, Suite 311, Saratoga Springs, New York 12866.

4. Defendant Rome is a New York corporation with a principal place of business located in Oneida County, New York at 1500 North James Street, Rome, New York 13440.

5. Upon information and belief, Defendant Ms. Tucker is an individual who resides at 3 Moreland Drive, Mechanicville, NY 12118. At all relevant times, Ms. Tucker was the Chief Financial Officer of Davin.

6. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) and (c) because there is complete diversity of citizenship of the parties, and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. The Court has personal jurisdiction over Defendants because they each transact business in the State of New York and each have sufficient minimum contacts with the State of

New York so that exercising personal jurisdiction over them comports with traditional notions of fair play and substantial justice.

8. Venue is appropriate under 28 U.S.C. § 1391 because this judicial district is where one or more Defendants reside and the judicial district in which a substantial part of the events or omissions giving rise to Health Carousel's claims occurred.

## FACTS COMMON TO ALL CLAIMS

9. Health Carousel repeats all previous allegations as if fully set forth herein.

10. Health Carousel provides healthcare staffing services and medical professionals throughout the United States, including to what are traditionally underserved areas, so that quality healthcare may be obtained throughout the country. Without Health Carousel's services, there could be critical shortages in medical professionals that could lead to lower quality healthcare services.

11. Health Carousel entered into several written Subcontract Supplier Agreements with Davin. A copy of one Staffing Agreement (the "Rome Agreement") is attached as Exhibit 1. The Rome Agreement relates to services provided to Rome. The remaining staffing agreements (collectively referred to, with the Rome Agreement, as the "Staffing Agreements") are attached as Exhibit 2.

12. Under Section 14 of the Staffing Agreements, entitled "Payment for Services," Davin agreed that it would remit payment to Health Carousel for services rendered by Health Carousel's healthcare professionals. Specifically, the Staffing Agreements provided that "[Davin] will remit payment to Subcontract Supplier within 14 days of clearing of payment from the Client for the same services rendered."

13. The Staffing Agreements further expressly allocated the ultimate payment responsibility to the hospital clients. As stated in Section 14(f) of each of the Staffing Agreements, "Client shall be solely responsible for any fees and other charges payable by Client with respect to [healthcare professionals] provided by [Health Carousel]." In the Rome Agreement, the Client is defined as Rome.

14. The Staffing Agreements further provided that "[i]n the event of non-payment of Client after 90 days from the pay period ending date, [Health Carousel] may seek payment directly from Client and may exercise any applicable legal remedies against Client." Staffing Agreements Sec. 14(f).

15. Pursuant to the Staffing Agreements, Health Carousel provided healthcare professionals to the hospital clients, including Rome.

16. Health Carousel fully complied with its contractual obligations under the Staffing Agreements, including by: (a) providing qualified and properly credentialed healthcare professionals; (b) ensuring that all healthcare professionals were legally authorized to work in the United States; (c) maintaining all required licenses and insurance; (d) complying with Joint Commission standards; (e) ensuring timely, complete and accurate timesheets were submitted and signed by the hospital client acknowledging actual time worked; and (f) timely submitting any required documentation in accordance with the Staffing Agreements.

17. Rome accepted the services provided for its benefit, approved the healthcare professionals' timesheets, and received the benefit of the healthcare professionals' work.

18. Health Carousel timely and accurately accounted to Davin for all hours worked by the healthcare professionals in accordance with the Staffing Agreements. Davin has failed to remit

payment, and despite demand, a principal sum of $339,291.24 is unpaid and past due in accordance with the statement attached as Exhibit 3.

19. Health Carousel has performed all conditions, covenants, and obligations required of it under the Staffing Agreements, except for any excused by Davin and Rome's breaches.

20. Health Carousel properly performed all material obligations required of it under the Staffing Agreements.

21. Davin has breached the Rome Agreement and Davin has breached the Staffing Agreements by failing to issue payments for the staffing services and healthcare professionals that Health Carousel provided.

**FIRST CAUSE OF ACTION**
**(Breach of Staffing Agreements against Defendant Davin)**

22. Health Carousel repeats all previous allegations as if fully set forth herein.

23. Health Carousel and Davin entered into valid contracts for healthcare staffing services as set forth in Exhibit 1 and Exhibit 2.

24. Health Carousel performed all conditions, obligations, and duties required on its part by supplying the services requested.

25. Defendant Davin has breached the contracts by failing to pay all amounts owed for Health Carousel's services.

26. Health Carousel has been damaged in the principal amount of $339,291.24, plus interest, attorneys' fees as allowed by law, and costs.

**SECOND CAUSE OF ACTION**
**(Fraud against Defendants Davin and Ms. Tucker)**

27. Health Carousel repeats all previous allegations as if fully set forth herein.

28. Health Carousel was prepared to suspend performance under the Staffing Agreements because of Davin's repeated breaches thereof by failing to issue payment to Health Carousel.

29. On March 7, 2025 Health Carousel wrote to Davin, "for Rome…unless we get payments soon (next 10 days) I am going to be recommending cutting off all credit to those accounts which would mean no extensions or additional placement will be made. While we want to continue to support these clients we cannot do so without regular payments."

30. That same day, Davin and Ms. Tucker communicated to Health Carousel "[w]ith Rome, your invoices are dated in November, 2024. They are clearing September, 2024 now. They are paying weekly clearing 2-3 weeks at a time. We expect by May or so they'll be under 120 days and trending down."

31. Davin and Ms. Tucker also communicated to Health Carousel "there is a path to catch up" for non-party Claxton-Hepburn Medical Center ("Claxton").

32. Davin and Ms. Tucker's statements were knowingly false. Health Carousel did not receive any payments from Davin for work at Rome until August 18, 2025, and thereafter only received $32,511 against billings of $167,526.05. Davin only issued Health Carousel two payments related to Claxton totaling $10,609.20 against billings of $82,197.83.

33. On or about April 10, 2025 Davin and Ms. Tucker told Health Carousel that Davin would make payments for Health Carousel's services related to Rome by the end of May. Davin and Ms. Tucker also told Health Carousel that Davin should be consistent with payments related to Health Carousel's services to St. Mary's Hospital ("St. Mary's").

34. Davin and Ms. Tucker's statements were again knowingly false. Davin was not consistent with payments related to St. Mary's, and Davin failed to make a single payment regarding Rome until August 18, 2025.

35. On or about June 12, 2025 Health Carousel had another meeting with Davin and Ms. Tucker where they confirmed payment regarding Rome "should be coming next" and that with respect to Rome, Davin would be consistent with payments going forward and start to enlarge payment amounts as well.

36. Davin and Ms. Tucker's statements were again false. Health Carousel never received any payment from Davin with regard to the services performed for Rome until August 18, 2025.

37. Just before October 8, 2025, Health Carousel had another meeting with Davin and Ms. Tucker, where again they stated that for Rome Davin would have more consistent payments and for St. Mary's Davin would be consistent with payments so that remaining invoices would be paid off.

38. Again these statements were knowingly false. Davin was inconsistent with payment regarding Rome, while Davin only issued a single payment with respect to St. Mary's after the statements.

39. On October 20, 2025 Davin and Ms. Tucker communicated that "[w]ith regard to Rome—263564 is in processing[.]"

40. Davin and Ms. Tucker's statement was knowingly false. Davin has not yet made payment to Health Carousel on this invoice.

41. Upon information and belief, Ms. Tucker, as Davin's Chief Financial Officer at the time of making these false statements, knew and/or recklessly disregarded that Davin had pledged

all accounts receivable, including money being received from the hospitals under the Staffing Agreements that was to be paid and to which it continually represented would be paid to Health Carousel, as collateral to a lender, was in default on that loan, would use money received for Health Carousel's services to pay down the loan, and knew that Health Carousel would not be paid in accordance with its representations.

42. On December 15, 2025, Health Carousel suddenly received communication from Davin's newly appointed "Windup Officer" that "we must face the economic realities affecting Davin and its ability to pay it subcontractor agencies" like Health Carousel.

43. Davin's Windup Officer continued that, "[a]ll of Davin's remaining assets, including its accounts receivable, serve as collateral for Davin's secured lender on a large outstanding balance."

44. Davin's Windup Officer also noted in this communication that "the value of our remaining assets [could] drop significantly and all value will go exclusively to the bank, which would eliminate any possible distribution to unsecured creditors such as yourself."

45. Upon information and belief, Davin was in default of its loan throughout the time that Davin and Ms. Tucker made their false statements and Davin and Ms. Tucker knew this.

46. Davin and Ms. Tucker made these false statements with the intent of inducing Health Carousel to continue performing on the Staffing Agreements and providing healthcare professionals to, *inter alia*, Rome, St. Mary's and Claxton so that Davin could *increase* its accounts receivable or cash and *decrease* its own lender indebtedness.

47. Davin and Ms. Tucker's false statements were collateral and extraneous to the Staffing Agreements.

48. By way of example, the Staffing Agreements have no provisions whereby Health Carousel was able to obtain assurances of any specified performance from Davin.

49. Health Carousel relied upon Davin and Ms. Tucker's false statements and its reliance was reasonable and foreseeable and was intended by Davin and Ms. Tucker to induce Health Carousel to not suspend or terminate performance under the Staffing Agreements, to continue performing under the Staffing Agreements and these false statements did so induce Health Carousel to continue to perform.

50. As a direct and proximate result of its reliance upon Davin and Ms. Tucker's false statements, Health Carousel continued an assignment at Claxton until May 17, 2025 when it finally refused to extend the healthcare professional, twice extended one healthcare professional's assignment and provided two additional healthcare professional assignments for Rome, and provided a healthcare assignment for St. Mary's.

51. As a direct and proximate result of its reliance upon Davin and Ms. Tucker's false statements, Health Carousel is entitled to an award of compensatory damages which include costs related to the employment and placement of the healthcare professionals it assigned, renewed, and/or continued at Rome, Claxton, and St. Mary's in a principal amount to be proven at trial, believed to be at or in excess of $110,623.

52. Defendants Davin and Ms. Tucker's actions were performed in an utterly reckless manner, were designed to maliciously injure Health Carousel while Davin benefitted, and gross, wanton or willful, entitling Health Carousel to an award of punitive damages.

53. Defendants Davin and Ms. Tucker are further liable to Health Carousel for all of its reasonable attorney's fees incurred and interest at the maximum rate allowed by law from the earliest date allowed by law until paid in full.

**THIRD CAUSE OF ACTION**
**(Breach of Rome Agreement against Defendants Davin and Rome)**

54. Health Carousel repeats all previous allegations as if fully set forth herein.

55. Health Carousel and Davin entered into the Rome Agreement, a valid contract for healthcare staffing services, which is set forth in Exhibit 1.

56. Rome is a third-party beneficiary of this contract.

57. Davin and Rome accepted Health Carousel's services under the Rome Agreement and thereby became bound to the same contractual payment obligations.

58. Health Carousel performed all conditions, obligations, and duties required on its part by supplying the services requested.

59. Defendants Davin and Rome have each breached the contract by failing to pay all amounts owed for Health Carousel's services.

60. Health Carousel has been damaged in the principal amount of $139,484.05, plus interest, attorneys' fees as allowed by law, and costs. *See* Exhibit 1, pg 3.

**FOURTH CAUSE OF ACTION**
**(Account Stated against Defendant Davin)**

61. Health Carousel repeats all previous allegations as if fully set forth herein.

62. Health Carousel issued statements reflecting the services provided and amounts due for the services provided.

63. Defendant Davin received the statements, did not dispute them within a reasonable time, and accepted the benefits of the services provided.

64. An account was stated between the parties, and Defendant Davin is indebted to Health Carousel for the full amounts owed for its services, $339,291.24, plus interest, attorneys' fees as allowed by law, and costs.

**FIFTH CAUSE OF ACTION**
**(Unjust Enrichment against Defendants)**

65. Health Carousel repeats all previous allegations as if fully set forth herein.

66. Defendants Davin and Rome knowingly received and benefitted from Health Carousel's staffing services.

67. It would be inequitable and unjust for Defendants Davin and Rome to retain these benefits without paying Health Carousel in an amount to be determined at trial, plus interest at the maximum rate allowed by law from the earliest date allowed by law until paid in full, and reasonable attorneys' fees.

**SIXTH CAUSE OF ACTION**
**(Specific Performance against Defendant Davin)**

68. Health Carousel repeats all previous allegations as if fully set forth herein.

69. Under the Staffing Agreements, Davin had an obligation to remit payment to Health Carousel within fourteen days of its receipt of payment from Client for Health Carousel's staffing services. Staffing Agreement Sec. 14(c).

70. Davin has indicated that the money it has or will receive from Rome under the Agreement is collateral under a separate loan that Davin has represented is outstanding. Davin has further intimated that as a result, monies paid by Rome under the Agreement will not be paid to Health Carousel.

71. Health Carousel is entitled to an order of specific performance requiring Defendant Davin to remit all payments from Rome relating to Health Carousel's healthcare staffing services to Health Carousel and to not use any such amounts as collateral or to satisfy any loan.

**WHEREFORE**, Plaintiff Health Carousel Travel Network, LLC hereby requests the following relief:

A. Judgment in its favor and against Defendant Davin Healthcare Workforce Solutions, Inc. f/k/a Stat Staff Professionals, Inc. in the principal sum of $339,291.24;

B. Judgment in its favor and against Defendant Davin Healthcare Workforce Solutions, Inc f/k/a Stat Staff Professionals, Inc. and Christine Tucker, individually, jointly and severally, in the principal sum at or in excess of $110,623, and all other compensatory damages provable as a result of fraud;

C. Judgment in its favor and against Defendant Rome Memorial Hospital, Inc. in the principal sum of $139,484.05;

D. The Court enter an order of specific performance against Defendant Davin Healthcare Workforce Solutions, Inc. f/k/a Stat Staff Professionals, Inc. prohibiting it from distributing any monies owed under the Agreement except for the benefit of Health Carousel;

E. An award of punitive or exemplary damages;

F. Interest at the maximum rate allowed by law from the earliest date allowed by law until paid in full;

G. Reasonable attorneys' fees and costs; and

H. All other relief, legal or equitable, to which it is entitled.

Respectfully submitted,

/s/ Philip J. Campisi, Jr.
Philip J. Campisi, Jr.
Attorney for Plaintiff
WESTERMAN BALL EDERER MILLER
ZUCKER & SHARFSTEIN LLP
1201 RXR Plaza
Uniondale, NY 11556
(516) 622-9200
pcampisi@westermanllp.com

Matthew R. Chasar
*Pro hac vice*
Attorney for Plaintiff
Reardon & Chasar, LPA
455 Delta Avenue Suite 108
Cincinnati, OH 45226
(513) 827 6136
mrchasar@reardonchasar.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 28, 2026 I electronically filed the foregoing with the Court using the CM/ECF system, which will send notification of such filing to all counsel of record authorized to receive electronic notification.

/s/ Matthew R. Chasar
Matthew R. Chasar, *pro hac vice*